UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JEFFREY S. MAYER, ) | CASE NO. 3:18-CV-2235 |
| Plaintiff, ) | JUDGE JAMES G. CARR |
| v. ) | Magistrate Judge George J. Limbert |
| ANDREW M. SAUL[1], ) COMMISSIONER OF SOCIAL ) SECURITY ADMINISTRATION, ) | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. ) | |

Plaintiff Jeffrey Mayer ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying his applications for a period of disability and disability insurance benefits ("DIB"). ECF Dkt. #1. In his brief on the merits, filed on February 12, 2019, Plaintiff asserts that the administrative law judge ("ALJ") committed reversible error by failing to properly evaluate the record in a longitudinal and comprehensive fashion. ECF Dkt. #12. For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's case in its entirety WITH PREJUDICE.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed a Title II application for a period of disability and DIB in October 2015, alleging disability beginning May 12, 2012 due to asthma, fractured vertebra in lumbar, spinal stenosis, spondylolisthesis, sciatica, arthritis in thoracic, migraines, systolic dysfunction of heart, knee issues, shoulder issues, lumbar issues, and spinal bifida since birth. ECF Dkt. #11 ("Tr.")[2] at 15, 102, 106, 219-20. Plaintiff's application was denied initially and

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2] All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

upon reconsideration. *Id.* at 102-08, 110-16. On June 22, 2016, Plaintiff requested an administrative hearing. *Id.* at 119-20.

On December 1, 2017, a hearing was held before an ALJ in which Plaintiff, with counsel present, and a vocational expert testified. Tr. at 33. The ALJ issued his decision on March 12, 2018, finding Plaintiff not disabled and denying his application for DIB. *Id.* at 12-27. Plaintiff requested a review of the hearing decision, and on August 13, 2018, the Appeals Council denied review. *Id.* at 1-4, 215. On September 27, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a merits brief on February 12, 2019 and Defendant filed a merits brief on April 30, 2019. ECF Dkt. #12; #15. Plaintiff filed a reply brief on May 8, 2019. ECF Dkt. #16.

## II.     FACTUAL BACKGROUND

In his decision, the ALJ clarified that Plaintiff must establish disability on or before the date last insured in order to be entitled to a period of disability and DIB. Tr. at 15. Therefore, the undersigned will focus its summary of evidence mainly on the relevant time period between the alleged date of disability of May 12, 2012 and the date last insured of March 31, 2014.

### A.     Relevant Medical Evidence

On December 4, 2012, Plaintiff presented to the emergency department with complaints of migraine, sinus congestion, cough, and left knee pain. Tr. at 961. The provider notes also provide that Plaintiff's past surgical history included orthopedic surgery, foot fracture surgery, knee surgery, shoulder surgery, tonsillectomy, and sinus surgery. *Id.* at 962. Plaintiff was diagnosed as having acute sinusitis, asthma, and strain of left knee and leg. *Id.* at 964.

On February 12, 2013, Dr. William Sanko examined MRI scans of Plaintiff's right shoulder and left knee. Tr. at 325. The left knee scan indicated two focal areas of chondral damage, which Dr. Sanko diagnosed as derangement of posterior horn of medical meniscus. They also discussed a future arthroscopic surgery on the left knee. *Id.* On February 15, 2013, Plaintiff presented to Dr. Jerome McTague, MD, at an emergency room department complaining of shortness of breath and an asthma attack earlier that morning. *Id.* at 944. Plaintiff received X-Rays

of his chest, which showed a stable radiographic appearance and no evidence of an acute process. *Id.* at 948-50.

On March 6, 2013, Dr. Sanko performed arthroscopic left knee surgery on Plaintiff. Tr. at 333-34. During a March 14, 2013 follow up visit, Dr. Sanko examined the knee and found that it was doing well: he had well healed incisions, full range of motion, no appreciable effusion, no calf tenderness, and had a negative Homan's sign. *Id.* at 322. On March 21, 2013, Plaintiff presented to Dr. Sanko for an MRI of his right shoulder. *Id.* at 319-21. Dr. Sanko reviewed the scan and found it consistent with mild AC joint arthropathy. *Id.* He also recommended Plaintiff get a subacromial shot. *Id.* at 319.

On April 2, 2013, Plaintiff presented to Jeffrey Tuck, PA-C (physician assistant-certified), complaining of inner ear infection and dizziness. Tr. at 361. Mr. Tuck diagnosed Plaintiff with acute sinusitis and prescribed antibiotics. *Id.* at 362. Later, on July 8, 2013, Plaintiff presented with further sinus complaints, and Dr. Sanko diagnosed acute sinusitis and asthma. *Id.* at 359-60. Plaintiff presented to Dr. Sanko on August 22, 2013 with cough and congestion issues and Dr. Sanko refilled his Albuterol medication. *Id.* at 356-58.

On October 4, 2013, Plaintiff presented to Mr. Tuck, with sinus drainage, productive coughing, and shortness of breath. Tr. at 354. Mr. Tuck assessed acute bronchitis, prescribed medications, and administered a Depomedrol injection. *Id.* at 356. On November 15, 2013, Plaintiff presented with further symptoms and Mr. Tuck assessed dysfunct eustacian tube and modified his treatment medications. *Id.* at 352-54. Plaintiff again presented to Mr. Tuck on December 27, 2013 for acute bronchitis. *Id.* at 350-51.

On January 16, 2014, Plaintiff presented to Dr. Erin Dariano, DO, for acute bronchitis and cough. Tr. at 370. However, Dr. Dariano's examination produced normal findings. *Id.* On February 13, 2014, Mr. Tuck noted that Plaintiff was fearful that his asthma was worsening over the prior 6 months, had to decrease lifting, and did not play ice hockey that winter. *Id.* at 345-47. Mr. Tuck continued Plaintiff on his routine asthma treatment. *Id.* at 346.

Shortly after his date last insured, Plaintiff presented to Dr. Gary Beasley, D.O., complaining of lower back pain and left leg pain that started when he twisted his body while

3

holding heavy packages at work. Tr. at 447, 536-37. Dr. Beasley assessed lumbosacral sprain strain and radiculopathy with paresthesias (numbness and tingling to the foot). *Id.* at 535, 537.

### B. Relevant Hearing Testimony

Plaintiff was born on May 9, 1975 and was 38 years old on the date last insured. Tr. at 39, 220. He lives in a one-story house with a basement with his wife and all of his three children, aged twenty-six, thirteen, and ten. *Id.* at 38, 41. Plaintiff also testified that although his wife works two jobs, he does not earn income and does not have food stamps. *Id.* at 41-42. Plaintiff is able to drive a car, and he has a handicap placard due to his breathing problems. *Id.* at 43.

In 2007, Plaintiff received a Master's Degree in exercise physiology, and he has also taken some Ph.D. courses. Tr. at 44. Between 2012 and 2014, Plaintiff testified that he tried working part-time in a management capacity for Corporate Transit of America ("CTA"). *Id.* at 44-46. He also tried teaching anatomy and physiology at the Dayton School of Medical Massage in 2015 but was only able to work for 2 months. *Id.* at 45. Prior to CTA, Plaintiff worked as an exercise physiologist where he would have to lift individuals, and he also worked at a fitness center giving assessments. *Id.* at 46-47.

Upon examination by the ALJ, Plaintiff testified that he stopped working at CTA because of back and breathing problems. Tr. at 48. He stated that he is a chronic asthmatic and uses a nebulizer two to four times a day and is on several asthma and allergy medications. *Id.* at 48-49. Plaintiff further testified that he began having back problems as early as April 28, 2000 when he broke his back after getting hit by a train, but he was also able to work after that date. *Id.* at 49-51. After March 31, 2014, Plaintiff exacerbated his back problems while working at CTA because he believes he lifted something wrong, which Dr. Loke appears to have confirmed. *Id.* at 51-52.

Plaintiff testified that he could sit for 15 to 25 minutes and stand in one spot for about 10 minutes. Tr. at 53. He stated that he cannot bend over and grab anything. *Id.* at 53-54. He spent most of his time (about 65-75% of his waking hours) in a recliner with his legs up because his legs swell profusely. *Id.* at 54-55. Plaintiff also stated that he has problems with his shoulders due to arthritic AC joints and a torn labrum, which cause numbness, tingling, and an inability to reach

over his head. *Id.* at 57. He also has problems with falling typically when he has gotten bronchitis because his oxygen levels drop, he passes out, and he has an asthma attack. *Id.* at 57-58.

Particularly, weather and temperature changes worsen Plaintiff's breathing problems. Tr. at 58-59. Plaintiff stated that he has had sinusitis problems since the '90s and has had 3 surgeries for it. *Id.* at 59. Plaintiff also noted that he does not have a PCL (posterior cruciate ligament) in his left knee since his train accident in 2000, and it both delayed his graduation from college for a year and ended his college football career. *Id.* at 59-60. During 2012-2014, Plaintiff stated that he got migraines once a month that lasted two to five days, which he treated with Percocet. *Id.* at 61.

### III. RELEVANT PORTIONS OF THE ALJ'S DECISION

On March 12, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 12-27. The ALJ stated that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2014. *Id.* at 15, 17. Therefore, Plaintiff needed to establish disability on or before that date to be entitled to a period of disability and DIB. *Id.* at 15. He further found that despite having worked after the alleged disability onset date, Plaintiff had not engaged in substantial gainful activity since May 12, 2012, the alleged onset date, through his date last insured of March 31, 2014. *Id.* at 17. Continuing, the ALJ determined that Plaintiff had the following severe impairments: asthma; obesity; degenerative disc disease at L4-S1 of the lumbar spine; and arthropathy of the knees and right shoulder. *Id.* The ALJ then indicated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 18.

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) with the following restrictions: could frequently climbs ramps and stairs, and never climb ladders, ropes, or scaffolds; could occasionally stoop and crawl, and frequently kneel and crouch; must avoid concentrated exposure to extreme heat, cold and pulmonary irritants, such as fumes, odors, dusts, etc.; must avoid all exposure to hazards. Tr. at 19. The ALJ then stated that Plaintiff was unable to perform any past relevant work. *Id.* at 25. He further found that Plaintiff was a younger individual age 18-

49 on the date last insured, had at least a high school education, and is able to communicate in English. *Id.* The ALJ noted that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a findings that the Plaintiff is "not disabled," whether or not the Plaintiff has transferable job skills. *Id.* Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed. *Id.* Ultimately, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 12, 2012 through March 31, 2014, the date last insured. *Id.* at 26.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The plaintiff has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

6

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a plaintiff on the merits or deprives the plaintiff of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.     LAW AND ANALYSIS

Plaintiff contends that the ALJ failed to properly evaluate the record in a longitudinal and comprehensive fashion. ECF Dkt. #12 at 7. Specifically, Plaintiff argues that the ALJ's analysis

was "rigid" and "unfair" because he found that Plaintiff was not disabled primarily because he aggravated his back on April 4, 2014 just a few days after his date last insured of March 31, 2014. *Id.* For the following reasons, the undersigned recommends that the Court find that the ALJ properly evaluated the record and the ALJ's findings are supported by substantial evidence.

In order to establish entitlement to DIB under the Social Security Act, a claimant must be under a disability and must be insured at the time of disability under § 423(c)(1). 42 U.S.C. § 423(a) & (d)(1)(A); 20 C.F.R. §§ 404.130, 404.315(a), 404.1505(a) ("Disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."). To qualify for DIB, a claimant must have paid enough in taxes to the Social Security system. Specifically, DIB benefits are computed based upon how much a claimant has paid into the Social Security system, through Social Security taxes, averaged out over a certain number of years. *See* 20 C.F.R. § 404.211 (section entitled, "Computing your average indexed monthly earnings"); DI 25501.240 Disability Freeze and Established Onset, SSA POMS DI 25501.240 ("For entitlement to Disability Insurance Benefits (DIB), a beneficiary needs a minimum number of years of covered employment."). To help meet the minimum earnings amount to qualify for DIB, a claimant may apply for a period of disability, which, if granted, would exclude that time period from his past earnings calculation. This may help a claimant because he may have little or no earnings during a period of disability. If a period of disability was included in the computation of a claimant's averaged indexed earnings for benefits, it would reduce or even eliminate future benefits. Thus, establishing a period of disability results in a "disability freeze," which means that a claimant's earnings, or lack thereof, during a period of disability are not considered in determining his eligibility for Social Security benefits and he may consequently meet the minimum earnings requirement to qualify for DIB. *See* DI 25501.240 Disability Freeze and Established Onset, SSA POMS DI 25501.240; *Kakos v. Ribicoff*, 213 F. Supp. 31, 31-32 (N.D. Ohio 1962). A claimant is entitled to a period of disability only if: (1) he had a disability, as defined by the Social Security Act; (2) he was fully insured when he became disabled; and (3) he filed while he was disabled or within twelve months

8

of the date the disability ended. 20 C.F.R. § 404.320; 42 U.S.C. § 416(i)(2). A period of disability cannot begin after a claimant's disability insured status has expired. SSR 83-10, at *8.

The ALJ determined that Plaintiff's earning records showed that he acquired sufficient quarters of coverage to remain insured through March 31, 2014 (the date last insured). The ALJ concluded that Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and DIB. Tr. at 15. Therefore, to be entitled to benefits, Plaintiff must establish that he was disabled for a continuous twelve-month or longer period, commencing between his alleged disability onset date of May 12, 2012 through his date last insured of March 31, 2014. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988) (citing *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967), *cert. denied*, 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487 (1967)); *see also Ripley v. Comm'r of Soc. Sec.*, No. 3:18-CV-02976-JDG, 2019 WL 6525846, at *7-8 (N.D. Ohio Dec. 4, 2019); 42 U.S.C. § 423(d)(1)(A) (defining "Disability").

A claimant's RFC is an assessment of the most that a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 404.1545(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. § 404.1545(A)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. §§ 404.1545(c); *see Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009); SSR 96-5p, 1996 WL 374183, at *5. SSR 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess his work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, a need for a structured living environment, and work evaluations. *Id*. However, since this case is limited to DIB, evidence that post-dates the date last insured is not relevant, except to the extent that it bears on

9

Plaintiff's functioning from the alleged onset date through the date last insured. *See, e.g.*, *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir.1976) (stating that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time"); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988) (finding medical evidence post-dating the date last insured may be considered but a delay of several years rendered it "minimally probative"); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (finding that treating physician's opinion was "minimally probative" because it post-dated the expiration of his insured status by eight months).

Plaintiff contends that the ALJ erred because he "primarily found that [Plaintiff] was not disabled because he aggravated his back on April 4, 2014 just a few days after his date last insured." ECF Dkt. #12 at 7. Plaintiff then cited to his medical records, including records from the month of April and June of 2014, the months after his date last insured, as well as Plaintiff's hearing testimony to show a "long history of impairments and surgeries" prior to the date last insured. *Id.* at 7-8. Plaintiff avers that despite having aggravated his back injury shortly after his date last insured, his impairments and limitations did not suddenly arise overnight, but rather were a result of years of surgeries and treatment compounded by obesity. *Id.* at 8.

Upon review of the ALJ's determination, the undersigned recommends that the Court find that the ALJ properly considered all of the relevant medical evidence. The ALJ addressed each and every medical record and Plaintiff's testimony of his symptoms pointed out in Plaintiff's own brief and more records beyond that. ECF Dkt. #12 at 7-8. First, the ALJ reviewed Plaintiff's hearing testimony, including his allegations of asthma, the time he is able to stand and sit, and his fractured vertabra in the lumbar spine, among other allegations. Tr. at 20. Then, the ALJ proceeded to his review of the medical evidence chronologically and based on the alleged symptom or condition. The ALJ discussed, in depth, Plaintiff's asthma, worsening respiratory symptoms, lumbar impairments, knee impairments, and right shoulder impairments before moving on to his discussion of opinion evidence. Tr. at 20-24.

Since Plaintiff's main contention focuses on the ALJ's treatment of Plaintiff's lumbar impairments, the undersigned will also focus on the ALJ's discussion thereof to which the ALJ

10

dedicated almost two pages. Tr. at 21-22. First, the ALJ noted Plaintiff's April 2014 work-related injury to his lumbar spine caused by unloading pallets from a truck to a minivan. *Id.* at 21 (citing tr. at 478-81, 535-40). Prior to that date, the Plaintiff's musculoskeletal examinations had been largely unremarkable. *Id.* (citing tr. at 541). The ALJ stated that Plaintiff's April 2014 treatment records strongly suggested that the severity of the Plaintiff's lumbar symptoms were associated with an acute injury that occurred after his date last insured of March 31, 2014 and were therefore not significant prior to April 4, 2014. *Id.* Clinical exams from April 2014 revealed some lumbar tenderness, normal spinal range of motion, negative straight leg raises bilaterally, full strength, intact sensation, normal gait, and intact coordination. *Id.* (citing tr. at 478-81, 535-40). The ALJ found that these clinical examination findings were inconsistent with his allegations of disabling lumbar symptoms, including an ability to sit, stand, or walk for prolonged periods during the relevant adjudicatory period. *Id.* In June 2014, Plaintiff received an MRI scan of his lumbar spine, the results of which showed good spinal alignment, minimal anterolisthesis of L5 on S1, right L5 pars defect, intact L5 pars defect, moderate thecal san stenosis secondary to epidural fat at L4-L5 and severe thecal sac stenosis secondary to epidural fat at L5-S1. *Id.* (citing tr. at 480, 489, 551-53). The ALJ specifically noted that a reviewing physician found no objective evidence supporting nerve root compression, which weakened Plaintiff's allegations of radicular symptoms, and who noted that his obesity may contribute to the epidural fat findings. *Id.* (citing tr. at 440).

The ALJ further discussed Plaintiff's follow up treatment records from July 2014 in which he endorsed low back pain with radicular symptoms in his left leg associated with his April 4, 2014 work injury. Tr. at 22 (citing tr. at 478-81). A clinical examination revealed decreased range of motion of the lumbar spine, normal gait, normal neurological functioning, and negative straight leg raising bilaterally. Plaintiff's right L5 pars defect was deemed not symptomatic. Plaintiff was diagnosed with lumbar strain, sacroiliitis, facet joint osteoarthritis and degenerative disc disease of the lumbar spine. An examining physician reviewed his MRI lumbar scan but determined that Plaintiff was not a surgical candidate. *Id.* (citing tr. at 478-81). The ALJ concluded that these findings weakened Plaintiff's allegations of disabling lumbar symptoms during the relevant time period. *Id.* The ALJ further supported his conclusion by also considering records from July 2014

to December 2014, which revealed mostly normal, unremarkable findings but also certain worsening symptoms that were effectively managed with nerve root injections. *Id.* (citing tr. at 427, 438, 501-07, 1032-35).

Ultimately, the ALJ found that the treatment records did not support Plaintiff's allegations of significant lumbar symptoms prior to his acute lumbar injury that occurred after his date last insured. Tr. at 22. The ALJ also acknowledged that Plaintiff had engaged in activities consistent with the ability to perform at least light exertion, including weightlifting and skating. *Id.* (citing tr. at 327-29, 345, 502, 942). Based on the MRI scan findings showing lumbar degenerative changes and clinical examinations documenting normal gait and intact neurological functioning, including full strength and intact sensation, the ALJ found that Plaintiff's lumbar impairment did not preclude work at the light exertional level. *Id.* However, the ALJ limited Plaintiff's RFC in an effort not to exacerbate his lumbar issues, such as limiting Plaintiff to: frequently kneel, crouch, and climb ramps and stairs; occasionally stoop and crawl; and never climb ladders, ropes or scaffolds. *Id.*

Accordingly, upon review of the ALJ's decision and reasoning, the undersigned recommends that the Court find that the ALJ provided substantial evidence to support his decision. The ALJ properly evaluated the record in a longitudinal and comprehensive manner by considering all the records and even records well beyond the date last insured. This is further evidenced by the ALJ having accounted for specific limitations supported by the evidence in the record in determining Plaintiff's RFC.

## VII.     CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the decision of the ALJ and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.

Date: January 7, 2020              */s/George J. Limbert*
                                   GEORGE J. LIMBERT
                                   UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file

objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).